Next case 513-0023-WC, Andrew Crayer v. Workers' Compensation Comm'n Mr. Carraway, pronounce that correctly. Yes, sir. I like the C. May it please the Court, Mr. Carraway. My name is Jason Carraway, and I represent the petitioner in this case, Andrew Crayer. The procedural posture of this case is something you've seen many, many times. It was an ITV that was filed on behalf of Mr. Crayer, asking for TTD, past medical benefits, and a pending L45 disc replacement. The Arbitrator Commission and the Circuit Court found that despite there was evidence showing the petitioner developed lower back pain while at work on March 21, 2011, the date of our accident, that that evidence was not enough. It was not enough to prove accident under the Act. To support this determination, the finders of fact said these things. The finders of fact said the petitioner never told his employer about the accident. The finders of fact said he never told his primary care doctor, Dr. Shenowork, about the accident. The finders of fact said they never told physical therapy about the accident. And lastly, the petitioner never told the Section 12 examiner, Dr. Bernardi, about the accident. Those are exactly the points to be addressed. So how does all of this translate into a finding against the manifesto of the evidence for the claimant? Your Honor, this is why. Because the petitioner testified, and the records maintain, that on March 21, 2011, in the scope and course of his employment, he was lifting a bag of bean clamps that he testified weighed 25 to 30 pounds. The backdrop of this factual story is that the petitioner worked heavy labor for four years, Your Honor. Never missed a day of work. It's undisputed. Never took a payment. It's undisputed. So what happened on March 21, 2011, and what did the petitioner tell, I think, more appropriately? When did he tell? Well, isn't it fair to say the Commission really didn't believe your claimant? They didn't find his testimony to be credible, right? That's what the finder of facts said below. Can't they do that? They can, but this Court has the opportunity, under the manifest way of the evidence standard, to look at the facts of a case. And to reverse their finding and credibility. If an opposite conclusion is clearly apparent, yes, that is true, Your Honor. What did the petitioner tell the employer? If you look at the legs of logic that hold this decision up, the petitioner's undisputed testimony is that he was lifting these bean clamps. He went and immediately told his supervisor exactly what a petitioner is supposed to do. The supervisor then said, go to see the nurse. And this is when the case gets interesting. And this is when the controversy occurs. Because if you look at the findings of fact of the arbitrator, which were confirmed, affirmed in their whole, all the way up, there's this nurse's note that's so troublesome in this case. Where this is an on-site, vectile, respondent-provided nurse. The nurse writes non-occupational at the top of the note. The nurse says, he never told me about anything other than he had spasms at work. Why is that hard to believe? It's not hard to believe at all. Because what happened in this case, Your Honor, is that my client had a history of scolioic spasms. He had scoliosis. But he hadn't had any of those spasms, undisputed. They have all the records. All the records are in front of you. He hadn't had any of those spasms since 2007. And he had worked four years after that as a heavy laborer without a single day of missed work. So when the petitioner, he testified to this. When he went in that night, and this argument doesn't deter my client's credibility. It should bolster his credibility. He said, I'm having muscle spasms. I need to go to the doctor. I don't know what's wrong with me. He was in such pain that night, the nurse wouldn't even let him drive off site. So it was only after, Your Honor, that he actually got an MRI, a couple of weeks later, that he realized it was work-related. Why? Because he had a bulging disc. It had nothing to do with scoliosis. Then he did what? He called the respondent and said, I now think this is work-related. And petitioners have that right under the Act. They have 45 days to give notice. Notice is not an issue. It's never been an issue. It's not an issue before the court today. How does that hurt my client's credibility? When he waits until after a scan to tell his employer, by the way, it's two weeks. It's not 60 days or 80 days with no notice on it. So that bolsters his credibility. What do the notes say? He goes to Shinnerwork first. If you look at the record, it's a normal primary care note. There's not even a narrative report. But what does it say? It says lumbago times two weeks. It's close in time. So he did tell his primary care doctor. Shinnerwork's referral to pain management lists the date of injury at the very same date that I filed it for, March 21, 2011. How in the world could the primary care doctor know nothing about this accident and write a referral to pain management for the very same date of accident for the very same symptoms? But here's what's important. That's when he gets his return to work restrictions. He takes those restrictions into Bechtel. Bechtel says, you're fired. He tries to go back to his doctor. He tries to even ask them for an accident report. It's undisputed. They say, you can't even fill out an accident report because you're not an employee. Talk to the insurance company. The first, and this is why an opposite result is clearly apparent, the very first narrative note in this case is the record at page 69, which is the first time this gentleman saw an orthopedic surgeon, Dr. Matthew Gornet. This is within 30 days of the accident. I'm going to read it. This is the first visit and spinal examination for Mr. Craer, who's a 22-year-old who presents with a chief complaint of low back pain to both sides, into both buttocks, bilateral groin, et cetera. He states his problem began on 3-21-11. He was working as a union laborer at Prairie State's electrical system. He was working for Bechtel. He was building some scaffolding. He stated that during that day he developed some tightness when he lifted a bag of clamps weighing approximately 25 pounds. All right, so is this simply a matter of, well, in addition to the fact that the commission had questions about the credibility of the claimant, didn't Dr. Bernardi testify that the claimant's work did not cause this condition of LBM? So isn't the commission's decision also supported by medical evidence? I'll certainly move that point, Your Honor. Again, an opposite result is clearly apparent. But didn't Bernardi testify it was not what really? He did. Okay, so how do you get around that? He also testified that he agreed that on the date of the accident the petitioner developed pain while at work. No, no, he testifies that that's what the petitioner told him. He doesn't know whether the petitioner developed it at work. All he does is record the history given to him by the claimant. He can't testify that it actually happened. He can testify that this injury could be caused by this, but he can't testify it actually happened. He just recorded the history given to him by the claimant. By the way, wasn't he sent to that doctor by his lawyers? Which doctor, Your Honor? Barnett. That's the claim. Well, is it true or isn't it? It's not true. And Dr. Bernardi was asked directly by me, Justice Hoffman, whether he believed that on March 21, 2011, while the petitioner was doing his work, whether he started to experience back pain. And Dr. Bernardi agreed with me. An opposite result is clearly apparent, Justice, for another reason. Dr. Bernardi was employed in this case to look at causation, certainly, but also to look at the pending L45 disc replacement. And Dr. Bernardi's opinions of Dr. Gornett are well known, and they are written in this report as they are in other reports. He believes that Dr. Gornett shouldn't be doing his own discograms. That's what he says. He's said it before. He's said it in this case. But when asked how many discograms he does, guess what he says? Oh, I'd never do those. Maybe one, two a year. They sent my client to an IME doctor to refute an L45 disc replacement who's never done one in his entire career. So if we're going to balance credibility and whether there's an opposite result that's clearly apparent. Let's not confuse balancing with clearly apparent. We don't balance here. We don't balance. We don't determine the weight to be given to testing. We only determine whether the opposite conclusion is clearly apparent. And if you define that, is there any credible evidence in the record that would support the commission's decision? If the answer to that question is yes, it's not against the manifest way of the evidence. If the question is no, it is. And that's one heck of a burden. It is, Your Honor. And I don't think there is any credible evidence in this case to support the conclusions of Dr. Bernardi over those of Dr. Gornet. Dr. Bernardi is not a board-certified orthopedic surgeon, Your Honor. But how do we make that determination? Isn't there a whole body of case law that says it's the commission's province to weigh the witness's credentials, resolve conflicts in the medical evidence? Do we substitute our judgment for that of the commission on these issues? No, Your Honor. But what you must do and what this court is charged with doing is to examine what the commission did, what they looked at, correct, and then decide whether an opposite result from that conclusion is readily apparent to this body. Well, if you don't throw out Bernardi, how could it ever be against? How could an opposite conclusion ever be apparent? You ask us, must we disregard Bernardi, which the commission didn't. But an opposite result is clearly apparent on the issue of whether or not, on accident as well, but now talking about that pending L45 disc replacement, and I'll posit this. Dr. Bernardi is not a board-certified orthopedic surgeon. Dr. Bernardi has never done a disc replacement in his life, and that was the issue before the commission, Justice. The issue before the commission was, after accident, is the petitioner entitled specifically to a pending L45 disc replacement at the hand of Dr. Matthew Gornhead? That's the issue. And the evidence produced by the respondent in this case was produced by a neurosurgeon who's never done this procedure. An opposite result to that conclusion is therefore readily apparent. If the court finds accident, it should, because the legs of logic that uphold this decision, they're not there. The legs of logic, I like that. Thank you. The legs of logic. Petitioner told his employer. Told every doctor he went to. He did. It's right there in the record. An opposite result is clearly apparent. If he gets the surgery and he gets the accident, he gets everything else. He gets the appropriate TTD benefits. We all know from scaffolding that case has been bounced around in every conversation lawyers have for three years. But that's the big if. Oh. Certainly there's an if. It's certainly within this court's decision. Why did the commission find that Gornet's opinion was questionable? On a mistake? What mistake did they make? Here's the mistake they made. If you read the decision, the commission says they each examined the petitioner one time. That was the basis of that decision. If you read the decision. That's the farthest thing from the truth. It's just a mistake. Dr. Gornet saw the petitioner on 4-18, to note I just read. On 4-19, on 6-13, on 7-7, and on 8-15. Gornet already saw this guy one time on an IME. An opposite result is clearly apparent. That's what the arbitrator said. I determined that Dr. Gornet's not credible because they examined him the same amount of time. That's so not true. Dr. Gornet ordered four weeks of PT, steroid injections. Talks about significant, he hasn't significantly improved. It's just not true, John. For those reasons, I think it's clear in this case on the issue of accident and the benefits that flow therefrom. An opposite result is clearly apparent. Thank you, Justice. Thank you, Counselor. Mr. Carr, you may respond. May it please the Court, Caraway. My name is Michael Carr. I represent Bechtel Construction, the appellee here, and the respondent below. It's naturally our position in this case that the arbitrator, the commission, and the circuit court were all correct in their determinations in this case and that, to use Mr. Carraway's phrase, the legs that support the decision are more than strong enough to do so. We respectfully submit that a review of the facts in the record support the findings of the commission and that an opposite conclusion is not as clearly as apparent as Mr. Carraway would like the Court to believe. What happened on March 21, 2011? The petitioner was at work and he had pain. That's undisputed. Nobody disagrees with that. He was at work and he had pain. But to have an accident that's compensable under the Act, he's got to show something more. He can't just be at work and have pain. There has to be an accident traceable to a definite time, place, and cause, and occurring in the course and scope of employment. When he goes to the nurse, and Mr. Carraway and the petitioner make a big deal about the importance of this nurse's note, whether or not the petitioner told the nurse that his injury was work-related or not, what he didn't say was, I was lifting the bag of bean clamps. I was doing anything related to my work. He didn't say that. That's not recorded in there. The petitioner didn't testify. He said, I was lifting a bag of bean clamps. So he acknowledges he never told him and kept them while he was lifting the bean clamps. I don't see where he says that. Yes, Your Honor. He goes to the nurse. He says, you know, I've had this back condition for years. I don't want Tylenol. I need muscle relaxers. I know I get max spasms. So the nurse sends him home because he's in pain. But at no point does anywhere in the record say he told the nurse, you know, I was lifting this bag of bean clamps. The accident just happened. He doesn't know what he was doing. Then he goes to Dr. Chenoweth ten days after the accident. Complaints of lumbago lasting two weeks duration. Well, of course, they can put it on March 21st. Everybody knows that's when the pain started. But what he doesn't tell Dr. Chenoweth is, or what Dr. Chenoweth doesn't record, is I was lifting a bag of bean clamps, and that's when it started. That's when I had the pain. He then goes to physical therapy. And when he gets to physical therapy, he says, and I think this is more clear than anything else, standing at work and had muscle spasms. He's simply standing at work and he has pain. That's in the notes of the... That's in the physical therapy note, yes, sir. And he says that it worsened on April 2nd, which isn't even the date of the accident in this case, and that it's worse right greater than left. That's what the physical therapy note says. Did the arbitrator of the commission have some problems with his credibility? Did they make some mention of that? Absolutely, Your Honor. What was that? Based on the fact that nothing supports, nothing in the medical records or other testimony supports the petitioner's claim that he was lifting a bag of bean clamps and that's the accident he had, there's nothing to support that. Based on that, the commission, the arbitrator, and the circuit court, they didn't find the petitioner credible. With respect to his testimony that lifting the bag of bean clamps is what caused the accident. What's Bernardi's testimony in summary? What's his opinion? Dr. Bernardi's testimony is that the petitioner didn't tell him about lifting the bag of bean clamps. He got that from a review of the records. But he doesn't believe that an accident occurred. And that's what his testimony was. He said in response to a question by Mr. Carraway, well, I don't think that it could have aggravated a preexisting condition because I don't think an accident occurred. Well, the reason why the commission discounted Gornet's testimony was because Gornet testified that if the petitioner was not accurate in his history, he would have to reevaluate his opinions. And then the commission went on to say that they found the petitioner's testimony regarding the issue of history not to be credible. And therefore you have to find that Dr. Gornet's opinions which rest on what the petitioner is telling him are also not credible. Well, the commission said that. Right. Because what the petitioner did was he filled out a handwritten history form when he went to see Dr. Gornet that doesn't even mention the bean clamp incident. Dr. Gornet testified, oh, yeah, the petitioner told me about that. But it's not in the handwritten history the petitioner provided to Dr. Gornet. There's simply the manifest weight of the evidence in this case clearly supports the decision the commission reached. Well, I mean, the whole thing surrounds one paragraph or one sentence or two sentences in the opinion or the arbitrator's decision which was adopted. It's the petitioner's responsibility to prove his case by a preponderance of the evidence. This case lies primarily upon petitioner's testimony which is not found to be credible. The arbitrator must find petitioner has failed to meet his burden with respect to the issue of accident. Therefore, the claim is denied. This is a case about the petitioner's credibility, pure and simple. That's it. That's correct, Your Honor. And unless there's any other further questions, the respondent and the appellee here would simply urge you to affirm all the decisions that petitioner is not credible and that benefits are not warranted in this case. Thank you, Your Honors. Thank you, counsel. Counsel, you may reply. Just very briefly, Justices. Just off and I agree. This is about the petitioner's credibility. The whole case. The whole case and the whole appeal. Justices, my client's credibility is brought into question because of the nurse's note originally that happened when he went that day, March 21, 2011. The petitioner told every one of his doctors, testified in open court, that he had had prior problems, that he had been diagnosed as having scoliosis, and that he had back spasms in the past. Yes. So how does that establish his claim? Because, Justice, when he went in that night, he wasn't trying to hide the fact that he had an accident. He didn't know that night whether or not the back spasms he was experiencing were related to the work that he had been doing last before he went on break, which was lifting a bag of bean clamps. Well, why didn't he tell anybody? Are you saying that merely because he has back spasms that work in and of itself and improves an industrial accident within the meaning of the act? No, Your Honor. He doesn't tell the physical therapist. He doesn't tell the doctor he's lifting the bean clamps. This doesn't surface until way after this. He doesn't remember what he was doing when these back spasms happened. Your Honor, the very first narrative note in this case was developed on 4-18-11 by Dr. Matthew Gornet. There's a clear history about bean clamps on 4-18-11. But not before that. He told a number of other people when he talked, but he didn't mention the bean clamps, correct? What he told the nurse was he was having back spasms, Your Honor, so you're correct. He didn't tell the nurse the last activity he was doing before he reported this accident to his supervisor. What difference does it make if the last activity that he was doing before he developed that pain in a man that has scoliosis due to proving that the last act was the cause of the pain? It's a good question, Justice Hoffman. The answer to the question is it's undisputed that for four years prior to this precipitating event, the accident, he never went to a doctor for back pain. He never took a single narcotic pain medication. He hadn't had problems. He has idiopathic scoliosis. Let's assume that's true. He hadn't been treated. He hadn't had medication. Didn't he, however, candidly acknowledge he has a history of back spasms at different times, right? He never denied that, did he? Up to 2007, you're correct. So if he had a back spasm at home, and then he goes to work and has a back spasm there, is that a compensable accident? Not if it's related to his scoliosis, unless the work aggravated the underlying preexistence. But he still has to prove it. Oh, certainly. And the last event he had before reporting this accident was lifting the bag of bean plants. My client should not be found less credible only because he waited until after an MRI confirmed a completely different condition than scoliosis. My client was never, not one time, diagnosed with a bulging disc at L4-5 in all of his treatment. It was only then that he reported this to him as a workplace accident, and he was terminated. It wasn't the law then. It's not the law today, and it shouldn't be the law tomorrow, that a petitioner doesn't have the right to first treat, then report the accident. There's a 45-day rule for a reason, justices. That doesn't hurt my client's credibility. In fact, it speaks a lot to it. Thank you. Thank you, counsel, both for your arguments in this matter. The court will be taken under advisement. A written disposition shall issue. The court will stand in very brief recess.